IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HOOKER FURNITURE CORPORATION,    )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          1:20CV451
                                 )
GTR LEATHER, INC.,               )
                                 )
          Defendant.             )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before the court is a Motion to Dismiss filed by Defendant GTR Leather, Inc. ("Defendant"). (Doc. 18.) Plaintiff Hooker Furniture Corporation ("Plaintiff") responded in opposition. (Doc. 22.) Defendant replied. (Doc. 24.) For the reasons set forth herein, this court will deny Defendant's motion.

## I.   FACTUAL BACKGROUND

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016). The facts, taken in the light most favorable to Plaintiff, are as follows.

In early 2018, employees of Plaintiff, a furniture company, developed a new sofa design that combined "reclining motion"

with "a Chesterfield-style frame." (First Am. Compl. for Patent Infringement and Demand for Jury Trial ("Am. Compl.") (Doc. 15) ¶ 14.)[1] Chesterfield-style sofas date back to the "old British Empire" and are "well known within the home furnishings industry" for their "luxury leather, deep buttoning,[2] low back[s] and high arms." (Id. ¶ 12.) By adding "specific recliner motion capabilities while preserving the essential elements of the Chesterfield style," (id. ¶ 14), Plaintiff's new design (commercialized through its "Savion collection") "quickly rose to Hooker Furniture's #1 selling seating item," (id. ¶ 19).

To protect the novel aspects of its new design, Plaintiff filed for, and in May 2018 received, a design patent—U.S. Patent No. D884,378 ("'378 Patent"). (Id. ¶¶ 20, 23.) The '378 Patent consists of the ornamental elements of the "adjustable seat"

_____

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] Deep buttoning is also called "tufting." (Am. Compl. (Doc. 15) ¶ 13.) The technique draws in the upholstery fabric "at regular intervals through use of stitches or thread." (Id.)

depicted in solid lines, as opposed to broken lines,[3] in fifteen separate drawings. (Ex. A ("'378 Patent") (Doc. 15-1).) During the patent application process, "the US Patent and Trademark Office (USPTO) conducted a thorough search of the prior art, and uncovered numerous examples of both Chesterfield-style furniture as well as numerous examples of standard motion furniture. Significantly, no designs featured both the attributes of Chesterfield styling and motion." (Id. ¶ 21.)

Plaintiff accuses Defendant, also a furniture company, of selling products that infringe Plaintiff's '378 Patent. (Id. ¶ 29.) Plaintiff alleges that like the '378 Patent, Defendant's product—known as the Model M198—combines motion with the Chesterfield style. (Id. ¶ 35.) Specifically, Plaintiff claims that the M198 copies "the manner in which the distinctive Chesterfield-style tufting pattern . . . is visible in each of five different positions through the range of the reclining

---

[3] "A design patent claims only what is defined by the solid lines of a figure. Any portion of the figure formed by broken lines is for illustrative purposes only and forms no part of the claimed design." Fecon, Inc. v. Denis Cimaf, Inc., No. 1:18-CV-00748, 2021 WL 3562910, at *3 n.6 (S.D. Ohio Aug. 12, 2021) (citing Manual of Patent Examining Procedure § 1503.02). The '378 Patent acknowledges this. ('378 Patent (Doc. 15-1) at 2 ("The dash-dot lines in the figures represent boundaries of the design that form no part of the claim. The dot-dot lines represent optional features, such as nail heads, and other portions of the adjustable seat that form no part of the claimed design.").)

- 3 -

motion." (Id.) Plaintiff acknowledges that there may be "minor differences" between the '378 Patent and M198 in, for example, arm design. (Id. ¶ 39.) Nevertheless, Plaintiff insists that the overall impression of the two designs is substantially similar, "thereby inducing" consumers to purchase the M198 supposing it to be Plaintiff's '378 Patent. (Id.) Plaintiff's Amended Complaint includes side-by-side images comparing drawings from the '378 Patent to Defendant's M198:



(Id. ¶ 31.)

## II.  <u>PROCEDURAL HISTORY</u>

Plaintiff filed its original complaint on May 21, 2020, (Doc. 1.), two days after the '378 Patent was issued, (Doc. 15-1). In August 2020, Defendant moved to dismiss, (Doc. 11), and requested that this court judicially notice ten prior art patents and nine photographs of the M198, (Doc. 13). On September 18, 2020, Plaintiff filed an Amended Complaint. (Am. Compl. (Doc. 15).) On October 2, 2020, Defendant filed a Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), (Doc. 18), along with an accompanying memorandum, (Def.'s Mem. in Supp. Of Mot. to Dismiss First Am. Compl. ("Def.'s Br.") (Doc. 19)). Defendant also renewed its judicial notice request. (Doc. 20.) Plaintiff responded in opposition to both the motion to dismiss and the request for the court to take judicial notice of the M198 photos. (Pl.'s Consolidated Resp. in Opp'n to Def.'s Mot. to Dismiss First Am. Compl. and Second Req. for Judicial Notice ("Pl.'s Br.") (Doc. 22).) Defendant replied. (Doc. 24.) This matter is now ripe for adjudication.

## III. <u>STANDARD OF REVIEW</u>

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

- 5 -

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. The factual allegations must be sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 680.

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 669. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom . . . in the plaintiff's favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## IV. <u>ANALYSIS</u>

This court will judicially notice the prior art patents referenced on the face of the '378 Patent but will not take notice of the proffered M198 photos. This court will also deny Defendant's motion to dismiss.

### A. <u>Request for Judicial Notice of Prior Art Patents and M198 Photos</u>

Defendant has requested that this court "take judicial notice of the prior art patents referenced on the face of the patent-in-suit . . . as well as photographs of the accused design, the M198 sofa." (Doc. 14 at 6.) This court will judicially notice the prior art patents but will not judicially notice the M198 photographs.

This court will judicially notice the ten prior art patents, all of which are referenced in the '378 Patent. (Exs. 1—10 (Docs. 13-1 — 13-10); '378 Patent (Doc. 15-1) at 2-3.) The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has judicially noticed patents that are not part of a case's record, on grounds that patents are public records. <u>E.g.</u>, <u>Hoganas AB v. Dresser Indus., Inc.</u>, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) ("Although that patent is not part of the record . . . it . . . is publicly accessible. Accordingly, we have taken judicial notice of it."). Likewise, the Supreme Court of the United States has judicially noticed public records

when reviewing motions to dismiss. E.g., Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not precluded in our review of the complaint from taking notice of items in the public record[.]").

Here, Defendant asks for "judicial notice of ten (10) patents that pre-dated the design patent-in-suit . . . and, in fact, appeared on the face of the 'D378 Patent itself." (Doc. 13 at 1.) These ten patents are public records. See Hoganas, 9 F.3d at 954 n.27. They are filed with the USPTO and are publicly available online. See U.S. Patent and Trademark Off., Patent Full-Text Databases, https://patft.uspto.gov/. And, pivotally, Plaintiff does not oppose Defendant's request that the patents be judicially noticed. (Pl.'s Br. (Doc. 22) at 28 n.4.) Therefore, this court takes judicial notice of them.

However, this court declines to judicially notice Defendant's nine proffered M198 photographs. At the motion to dismiss stage in design patent infringement cases, the Federal Circuit has only allowed for the use of photos outside the complaint when those photos' "authenticity has not been called into question." Anderson v. Kimberly-Clark Corp., 570 F. App'x 927, 932 (Fed. Cir. 2014). Here, the photos' authenticity has been questioned. Indeed, Plaintiff expressly "contest[s] the

- 8 -

authenticity and accuracy of Defendant's photographs," (Pl.'s Br. (Doc. 22) at 28), and therefore it would be inappropriate to judicially notice them at this juncture.

**B.    Motion to Dismiss Design Patent Infringement Claim**

This court will deny Defendant's motion to dismiss Plaintiff's design patent infringement claim although, as discussed in Part IV.B.2., _infra_, this court is skeptical of the ultimate merits of Plaintiff's infringement claim in light of the prior art.

Design patents protect a "new, original and ornamental design for an article of manufacture." 35 U.S.C § 171. Importantly, "a design patent, unlike a utility patent, limits protection to the ornamental design of the article." Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293 (Fed. Cir. 2010). When a design contains both ornamental and functional aspects, the design patent's scope is limited to the ornamental "aspects alone and does not extend to any functional elements of the claimed article." Id. at 1294.

The standard for determining design patent infringement is whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to

- 9 -

be the other." Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1871). This standard articulated by Gorham has come to be "referred to as the 'ordinary observer' test." Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 670 (Fed. Cir. 2008).

The test is operationalized via two steps, Performance Designed Prods. LLC v. Mad Catz, Inc., No. 16cv629-GPC(RBB), 2016 WL 3552063, at *2 (S.D. Cal. June 29, 2016) ("The 'ordinary observer' test involves a two tiered approach."), with each step "involv[ing] a side-by-side study of the designs," Great Neck Saw Mfrs., Inc. v. Star Asia U.S.A., LLC, 727 F. Supp. 2d 1038, 1052 (W.D. Wash. 2010), aff'd, 432 F. App'x 963 (Fed. Cir. 2011). First, "without review of the prior art, the claimed and accused designs" are compared to one another to determine whether they are substantially similar. Id. If so, the second step "compar[es] the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015); accord Wing Shing Prods. (BVI) Co. v. Sunbeam Prods., Inc., 665 F. Supp. 2d 357, 362 (S.D.N.Y. 2009) ("[The] second level analysis . . . accounts for prior art . . . .").

If at either step it is determined that the "designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." Ethicon Endo-Surgery, 796 F.3d at 1335. In the instant case, this court will find it plausible that the ordinary observer would deem the designs to be substantially similar at step one and step two, albeit Plaintiff's claim is weakened by the step two analysis.

Generally, to survive a motion to dismiss a design patent infringement claim, a "plaintiff need only plead, in addition to basic information such as the name of the defendant and the patent owned by the plaintiff, 'the means by which the defendant allegedly infringes' and 'the sections of the patent law invoked.'" SATA GmbH & Co. KG v. Cent. Purchasing, LLC, No. CV 20-02131 DDP (JPRx), 2021 WL 949598, at *4 (C.D. Cal. Mar. 12, 2021) (quoting Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1362 (Fed. Cir. 2013)). Motions to dismiss a design patent infringement claim are "generally inappropriate" because "[t]he Federal Circuit has held that determining infringement of a design patent is a question of fact." Enerlites, Inc. v. Century Prods. Inc., No. SACV 18-839 JVS(KESx), 2018 WL 4859947, at *3 (C.D. Cal. Aug. 13, 2018).

- 11 -

Nevertheless, "while infringement is a question of fact, courts may dismiss claims of design infringement on a Rule 12(b)(6) motion where, as a matter of law, no reasonable factfinder could find infringement." Curver Luxembourg, SARL v. Home Expressions Inc., No. 2:17-cv-4079-KM-JBC, 2018 WL 340036, at *4 (D.N.J. Jan. 8, 2018), aff'd, 938 F.3d 1334 (Fed. Cir. 2019); accord Converse Inc. v. Steven Madden, Ltd., Civil Action No. 20-11032-NMG, 2021 WL 3293624, at *2 (D. Mass. Aug. 2, 2021) ("Courts may dismiss claims of design infringement on Rule 12(b)(6) motions where it finds that no reasonable fact-finder could find infringement as a matter of law."); MSA Prods., Inc. v. Nifty Home Prods., Inc., 883 F. Supp. 2d 535, 540 (D.N.J. 2012) (collecting cases where courts granted Rule 12(b)(6) motions to dismiss design patent infringement claims); Performance Designed Prods., 2016 WL 3552063, at *7 (same). This is appropriate when, after applying the ordinary observer test "through its own eyes," Minka Lighting, Inc. v. Craftmade Int'l, Inc., 93 F. App'x 214, 216 (Fed. Cir. 2004), the district court finds that "the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,'" and thus it is implausible that the patentee could "meet its burden of proving infringement as a matter of law." Ethicon Endo-Surgery, 796 F.3d at 1335.

- 12 -

The Federal Circuit has affirmed district court Rule 12(b)(6) dismissals of design patent infringement claims on multiple occasions. <u>Curver Luxembourg, SARL v. Home Expressions Inc.</u>, 938 F.3d 1334, 1343 (Fed. Cir. 2019) ("[W]e affirm the district court's grant of Home Expressions's motion to dismiss the complaint for failure to state a plausible claim of design patent infringement."); <u>Colida v. Nokia, Inc.</u>, 347 F. App'x 568, 570 (Fed. Cir. 2009) (affirming the district court's grant of the defendant's motion to dismiss where the pro se plaintiff's "infringement claims were facially implausible and provided the district court with no basis on which to reasonably infer that an ordinary observer would confuse the pleaded patented designs with the accused [product]"); <u>Vigil v. Walt Disney Co.</u>, 232 F.3d 911, at *1 (Fed. Cir. 2000) (table decision) ("We agree that the district court did not exceed its discretion in dismissing the [design patent infringement claim] on the merits.") ; <u>see also</u> <u>Anderson</u>, 570 F. App'x at 933—34 (affirming grant of the defendant's Rule 12(c) motion for judgment on the pleadings where the district court "properly concluded that 'plain differences' exist between the accused products and the [pro se plaintiff's] patented design").

As the below analysis explains, this court will find that it is plausible the ordinary observer would find the two designs

to be substantially similar at both steps of the ordinary observer test. While step two is a close call, this court will find that it remains plausible the ordinary observer could be deceived because the factual and prior art record remains largely undeveloped due to this case being in its preliminary stages.

### 1. Step 1: Comparison of the '378 Patent to the M198

Defendant argues there are a multitude of discrete differences between the '378 Patent and M198's ornamental features. For example, Defendant asserts that the '378 Patent "displays a dense array of visible tufting buttons set in 'diamond' array," while in contrast the M198 is "overstuffed and loosely-tufted." (Def.'s Br. (Doc. 19) at 20.) Additionally, Defendant maintains that the '378 Patent's "armrests are minimal, simply an inverted 'L,' and appear narrow across the top," while the M198 has "shepherd's-crook rolled arms—clearly flat-topped and wide." (Id. at 20-21.) Defendant highlights these differences, among others, in annotated side-by-side visuals comparing the '378 Patent to images of the M198 that Plaintiff attached to its Amended Complaint:

- 14 -



Dissimilar PROFILE:

- Claimed Design: Low back at nearly same level as arms
  *vs.*
- Acused Design: Rolled back set higher than arms

*D'378 Patent, FIG. 2 (DOC. 15-1)*

Dissimilar NUMBER & STYLE OF TUFTING:

- Patented Design: Tight diamond-shaped tufting, with as many as 60 tufts per seat; buttons at the center of each tuft clearly visible
  *vs.*
- Accused Design: Loose, widely-spaced, square "biscuit" tufting; no buttons consistent with casual style; approximately 30 tufts/seat.

Dissimilar ARM DESIGN:

- Patented Design: Inverted "L" shaped arm (excluding the dashed lines)
  *vs.*
- Accused Design: "Shepard's Crook" shape; generous padding extending beyond lower structure; wide, almost table-like top.

*GTR M198 (DOC.15-2)*



*D'378 Patent, Fig. 1 (Doc. 15-1)*

Dissimilar ARMREST PADDING:
- Patented Design: Slim armrests repeating tight diamond tufting of main sofa inside and kept high relative to rest of the side
- Accused Design: Thicker, wider, overstuffed rollover arms creating visible bumpers protruding from each side of the couch.

Dissimilar ELECTRONIC CONSOLE:
- Patented Design: Uninterrupted tufting inside the end armrest
- Accused Design: Visible insert for power chair controls and a USB charging port on inside of the end armrest.

*Accused M198 Design (Doc. 15-2)*

(Id. at 22-23.)

In addition to highlighting these discrete differences, Defendant also contrasts, at a high level, "the respective 'look and feel' of the designs at issue." (Id. at 19.) Defendant

- 16 -

claims that the '378 Patent's "impression is one of tacked-down stateliness bordering on sternness — attractive but rigid. Such a sofa would be expected in the private library of an 18th century British aristocrat." (Id. at 20.) In distinction, the M198 "seems suited to be a gathering spot for lounging" "in a busy family room." (Id. at 21.) In sum, "[a]n ordinary observer who notices the studied ease of the M198 is highly unlikely to mistake it for the traditional, confined stateliness of the D'378 Patent design."[4] (Id.)

Plaintiff disagrees, arguing that "an ordinary observer would see both designs are traditional Chesterfield-style

_____

[4] Moreover, Defendant stresses that the designs would also not be mixed up because "the 'ordinary observer' test imputes to the ordinary observer 'such attention as a purchaser usually gives.'" (Def.'s Br. (Doc. 19) at 17 (quoting Egyptian Goddess, 543 F.3d at 670).) Since Plaintiff's "commercial embodiment" of the '378 Patent retails for $4,999, Defendant argues "it is reasonable for the Court to assume that a buyer will exercise great care before making such a costly purchase. In turn, this means that differences between the M198 and the patented design will be magnified." (Id. at 18.) This argument, while logical and reasonable, is bereft of legal support. Despite the ordinary observer test being 150 years old, Gorham Mfg. Co., 81 U.S. at 528 (1871), Defendant cites no authority to support the proposition that there is a higher standard to prove design patent infringement for designs embodied in relatively expensive goods. The only authority Defendant cites is an unpublished Third Circuit trademark case concerning the name of Indian grocery stores. PB Brands, LLC v. Patel Shah Indian Grocery, 331 F. App'x 975, 982 (3d Cir. 2009). In lieu of more persuasive authority, this court is disinclined to add an element to the Federal Circuit's test for design patent infringement just because the commercial embodiment of a design is expensive.

seating comprised of a tufting pattern with deep buttoning, low back, and high L-shaped arms, and with reclining capabilities." (Pl.'s Br. (Doc. 22) at 16.) Plaintiff also challenges the existence of several of the alleged design differences, including the allegations that the '378 Patent does not have a "smile line" and that the M198 includes an electronic console.[5] (Id. at 23.) But Plaintiff insists that "[i]n any event," all of the "alleged differences are minor at most, and do not impact the overall impression." (Id. at 22.)

"[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." Crocs, Inc. v. Int'l Trade Comm'n, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (alteration in original) (quotation marks omitted) (quoting Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 991 (Fed. Cir. 1993)). "Where, as here, the claimed design includes several elements, the fact

_____

[5] Plaintiff's argument regarding these differences appears to have some merit. Defendant claims that "the M198 design displays a secondary 'smile' line when the chair is reclined. No such feature is apparent on the patented design." (Def.'s Br. (Doc. 19) at 25-26.) But Figures 13 and 14 of the '378 Patent do feature a "smile line," albeit in these figures the sofa is not in the reclined position but rather the position in which the sofa's top is extended. ('378 Patent (Doc. 15-1) figs. 13-14.) Moreover, Defendant's claim that unlike the '378 Patent, the M198 features a visible electronic console, (Def.'s Br. (Doc. 19) at 20), is undercut by the fact that at least one item from Defendant's M198 design line does not appear to have such a console. (Ex. C (Doc. 15-3) at 14.)

- 18 -

finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." <u>Ethicon Endo-Surgery</u>, 796 F.3d at 1335. But this court need not rely on the parties' verbal descriptions of the overall designs, because "[d]epictions of the claimed design in words can easily distract from the proper infringement analysis of the ornamental patterns and drawings." <u>Crocs</u>, 598 F.3d at 1302.

Accordingly, this court need not give much credence to either Defendant's highlighting of discrete ornamental differences, <u>see</u> <u>Ethicon Endo-Surgery</u>, 796 F.3d at 1335, or Defendant's verbal description of each designs' overall impression, <u>see</u> <u>Crocs</u>, 598 F.3d at 1302. Rather, this will court compare the two designs "through its own eyes" to determine whether the M198 could plausibly induce a purchase by an observer who had intended to buy the '378 Patent design instead. <u>Minka Lighting</u>, 93 F. App'x at 216; <u>see also</u> <u>Torspo Hockey Int'l, Inc. v. Kor Hockey, Ltd.</u>, 491 F. Supp. 2d 871, 877 (D. Minn. 2007) ("A district judge is an ordinary observer[.]").

In its determination, this court will not consider the designs' "reclining motion" capability, (Am. Compl. (Doc. 15) ¶ 35), because design patents only protect ornamental features, 35 U.S.C. § 171, and thus "functional aspects of the claimed

- 19 -

designs are properly excluded from the infringement analysis,"
Ethicon Endo-Surgery, 796 F.3d at 1315; accord Lee v. Dayton-
Hudson Corp., 838 F.2d 1186, 1189 (Fed. Cir. 1988). To maintain
that the '378 Patent's "reclining motion" is somehow ornamental—
as opposed to functional—is demonstrably implausible, and thus
no formal claim construction is needed at this juncture to
conclude that the '378 Patent's motion capability falls outside
the patent's scope as a matter of law.[6]

Nevertheless, for purposes of the first step of the
ordinary observer test, in which prior art patents are not
examined, this court finds Plaintiff has pled more than
sufficient facts to allege that an ordinary observer comparing
the overall designs could plausibly perceive them to be
substantially similar. Plaintiff's Complaint includes side-by-
side visuals of the '378 Patent and M198, (Am. Compl. (Doc. 15)

---

[6] This court notes that claim construction assumes somewhat
of a lesser importance in design patent cases. Egyptian Goddess,
543 F.3d at 679-80 ("[C]ourts should not treat the process of
claim construction as requiring a detailed verbal description of
the claimed design, as would typically be true in the case of
utility patents."). Nevertheless, the Federal Circuit has noted
that functionality issues can benefit from construction. Id. at
680. While even Plaintiff does not explicitly argue that the
'378 Patent's motion capability is functional, Plaintiff does
contend that "the patented sofa design in various stages of
motion" is covered by the design patent. (Pl.'s Br. (Doc. 22) at
14.) The court reserves the right to revisit, clarify, and
further address functionality issues in any forthcoming formal
claim construction proceedings.

¶ 31), that must not be dissected to isolate "minor differences," as Defendant has done, (Def.'s Br. (Doc. 19) at 22-23), but rather examined in their totality with "a view to the design as a whole," Crocs, 598 F.3d at 1303. When this holistic view is taken, this court cannot say that it is implausible that an ordinary observer could perceive the two designs to be substantially similar; both are Chesterfield-style sofas with bent arms and tufting applied to the whole seating surface — tufting that is visible in different positions throughout the motion range:



(Pl.'s Br. (Doc. 22) at 15-16 (incorporating photos from Am. Compl. (Doc. 15) ¶ 31).) Therefore, this court finds it plausible that an ordinary observer could perceive the designs to be substantially similar under the ordinary observer test's first step, and thus this court must proceed to the second step.

**2.  Step 2: Comparison of the Designs to the Prior Art**

The ordinary observer test's second step "compar[es] the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." Ethicon Endo-Surgery, 796 F.3d at 1335; accord Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd., 525 F. Supp. 3d 1145, 1210 (S.D. Cal. 2021) ("If a court sees no immediately apparent dissimilarities upon comparison, it should then compare the claimed design and accused design or product to relevant prior art, with which the ordinary observe[r] is considered to be familiar."). Like at step one, if after conducting this analysis it is determined that it is implausible the ordinary observer could perceive the designs as substantially similar, then infringement cannot be established "as a matter of law." Ethicon Endo-Surgery, 796 F.3d at 1335.

While the importance of minor design differences is always magnified at the ordinary observer test's second step, see

- 22 -

Egyptian Goddess, 543 F.3d at 678, in this case that is true to an even greater extent because (1) the prior art field is crowded, and (2) the '378 Patent and M198 closely resemble that prior art. With these minor differences assuming more importance, it becomes less likely that the ordinary observer would be deceived into mistaking the M198 for the '378 Patent. However, this court will decline to make a finding that such deception is implausible given that the factual record of prior art is not fully developed at this early stage in the case.

### a. The Field of Chesterfield Sofa Prior Art Appears Crowded

Defendant argues that because the Chesterfield design has existed for so long and is so well known, this court should find that the field of prior art is crowded. (Def.'s Br. (Doc. 19) at 17.) Thus, Defendant asserts that "even small differences can distinguish GTR's M198 from the patented design to the hypothetical ordinary observer" familiar with the prior art. (Id.)

When "a field is crowded with many designs," the "step two analysis requires a narrow focus on differences between designs." OraLabs, Inc. v. Kind Grp. LLC, No. 13-cv-00170-PAB-KLM, 2015 WL 4538444, at *10 (D. Colo. July 28, 2015) (internal quotation marks omitted) (quoting and describing Great Neck Saw Mfrs., 727 F. Supp. at 1053). The Federal Circuit has explained

- 23 -

that "where in a crowded art the composite of differences presents a different impression to the eye of the average observer . . . infringement will not be found." <u>Egyptian Goddess</u>, 543 F.3d at 675 (quoting <u>Applied Arts Corp. v. Grand Rapids Metalcraft Corp.</u>, 67 F.2d 428, 430 (6th Cir. 1933)).

Recognizing that the record is limited at this early stage in the case, this court nevertheless notes that the field of Chesterfield sofa prior art design patents appears crowded. Plaintiff itself recognizes that Chesterfield sofas date back to the British Empire, are well known within the home furnishings industry, and are "among the most 'recognizable pieces of furniture in the world.'" (Am. Compl. (Doc. 15) ¶ 12.) Moreover, Plaintiff acknowledges that during the prosecution of the '378 Patent, the USPTO "conducted a thorough search of the prior art, and uncovered numerous examples of [] Chesterfield-style furniture." (<u>Id.</u> ¶ 21.) Plaintiff described these examples as evidence of "extensive prior art." (<u>Id.</u> ¶ 22.)

These admissions, combined with the multiple prior art Chesterfield sofa design patents disclosed on the face of the '378 Patent itself, (Exs. 5–10 (Docs. 13-5 — 13-10)), suggest that the field of prior art Chesterfield sofa design patents is crowded. Therefore, because the field is crowded, this court is inclined to take a more "narrow focus on differences between

- 24 -

designs," OraLabs, 2015 WL 4538444, at *10, to determine whether "the composite of differences presents a different impression to the eye of the average observer." Egyptian Goddess, 543 F.3d at 675. If so, infringement cannot be found as a matter of law. Id.

### b. The '378 Patent Design and M198 Resemble the Prior Art Design Patents

Defendant argues that the '378 Patent and M198 closely resemble the prior art design patents. (See, e.g., Def.'s Br. (Doc. 19) at 28 (likening the '378 Patent to the prior art "Bellini" and "Garrison" design patents, while likening the M198 to the prior art "Winrow" design patents).)

"If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer." Crocs, 598 F.3d at 1303. Likewise, "strong similarities between the accused design and the prior art are an indication of non-infringement." Wing Shing Prods., 665 F. Supp. 2d at 368 (citing Egyptian Goddess, 543 F.3d at 676, 678). The ordinary observer is attuned with these comparisons to the prior art because the "ordinary observer of the Gorham test" is "not one 'who has never seen a [Chesterfield sofa], but one who, though not an expert, has reasonable familiarity with such objects[.]'" Egyptian Goddess, 543 F.3d at 675 (quoting Applied Arts, 67 F.2d at 430). This familiarity enables the ordinary

- 25 -

observer to be fully "capable of assessing the similarity of the patented and accused designs in light of the similar objects in the prior art." Id.

Accordingly, because of this familiarity with the prior art and Chesterfield sofas generally, the ordinary observer understands that the traditional Chesterfield design features deep buttoning, low backs, and high arms:



Case 1:20-cv-00451-WO-JLW   Document 25   Filed 02/18/22   Page 26 of 40




(Ex. 5 (Doc. 13-5) fig.2; Ex. 6 (Doc. 13-6) fig.2; Ex. 7
(Doc. 13-7) fig.1; Am. Compl. (Doc. 15) ¶ 13.) Indeed, Plaintiff
expressly admits these features are hallmarks of the style. (Am.
Compl. (Doc. 15) ¶¶ 12-13.) Given that the '378 Patent shares
these features with the prior art, "small differences between
the accused design and the claimed design," that heretofore
seemed minor, "assume more importance." Crocs, 598 F.3d at 1303.
Nonetheless, this court is ever mindful that it must not conduct
"[a]n element-by-element comparison, untethered from application
of the ordinary observer inquiry to the overall design[.]"

- 27 -

Ethicon Endo-Surgery, 796 F.3d at 1335. To do so "is procedural error." Id. Thus, the design distinctions that are discussed below are only relevant to the extent that their aggregate effect impacts the ordinary observer's overall impression.

When viewed through the lens of the prior art, Defendant's claim that the M198's arm shape is dissimilar from the '378 Patent's has more merit. Without benefit of the prior art, the ordinary observer may deem the designs' arm shapes to be similar—both feature high, bent arms. However, familiarity with the prior art draws the ordinary observer's eye to the finer distinctions. While the '378 Patent's arms are an inverted "L" shape,



Case 1:20-cv-00451-WO-JLW   Document 25   Filed 02/18/22   Page 28 of 40

('378 Patent (Doc. 15-1) fig.2), the M198 arms are rolled and "shepherd's-crook" shaped, like that seen in the prior art:



(Comparing Ex. B (Doc. 15-2) at 3, with Ex.6 (Doc. 13-6) fig.1.) This, and other, "strong similarities between the accused design and the prior art are an indication of non-infringement." Wing Shing Prods., 665 F. Supp. 2d at 368.

Another alleged distinction between the designs that becomes starker in the context of the prior art, is Defendant's claim that the M198's tufting is dissimilar from the '378

Patent's. Bereft of the prior art, the ordinary observer may view the designs' respective upholstery to be similar—both are tufted. However, as with arm shape, awareness of the prior art accentuates heretofore minor design differences. The '378 Patent features diamond tufting, like that seen in the prior art:



(Comparing '378 Patent (Doc. 15-1) fig.2, with Ex.7 (Doc. 13-7) fig.1.) In contrast, the M198 utilizes square "biscuit" tufting, seen elsewhere in the prior art:



(<u>Comparing</u> Ex. B (Doc. 15-2) at 3, <u>with</u> Ex. 8 (Doc. 13-8).)
Informed by this prior art, the different tufting of the '378
Patent and M198 "assume[s] more importance," <u>Crocs</u>, 598 F.3d at
1303, and materially affects the ordinary observer's overall
impression of the two designs.

Likewise, the prior art lends credence to Defendant's
assertion that the M198's lack of visible buttons significantly
distinguishes it from the '378 Patent. The '378 Patent features
clearly visible, circular buttons, similar to those seen in the
prior art:



(<u>Comparing</u> '378 Patent (Doc. 15-1) fig.8, <u>with</u> Ex.9 (Doc. 13-9)

fig.2.) In contrast, the M198 forgoes visible buttons, a style

Case 1:20-cv-00451-WO-JLW   Document 25   Filed 02/18/22   Page 32 of 40

seen in other prior art patents:





(<u>Comparing</u> Ex. B (Doc. 15-2) at 2, <u>with</u> Ex. 5 (Doc. 13-5)
fig.1.) As with tufting shape, the lens of the prior art makes
the different buttoning of the '378 Patent and M198 "assume more
importance," <u>Crocs</u>, 598 F.3d at 1303, and impacts the ordinary
observer's overall impression of the respective designs. Again,
these aforementioned distinctions must not be viewed in

isolation, but rather "in the context of the claimed design as a whole," Ethicon Endo-Surgery, 796 F.3d at 1335, with an eye towards the "overall impression of" the designs, Crocs, 598 F.3d at 1304.

Recall that because the '378 Patent is a design patent not only is the design's motion function disregarded, supra Part IV.B.1, but so too are all broken lines in the patent's drawings, supra note 3. Disregarding the broken lines eliminates much of the sofa design's sides, arms, and legs from the ordinary observer's consideration:

Case 1:20-cv-00451-WO-JLW   Document 25   Filed 02/18/22   Page 34 of 40





<u>(See, e.g.,</u> '378 Patent (Doc. 15-1) figs. 2, 3.) Given that the
'378 Patent does not include any drawings of the sofa's back,
once the broken lines are disregarded—in addition to the motion
function—a large portion of what is left to form the ordinary
observer's overall impression is the sofa's upholstered seating
area in various positions. While both the '378 Patent and the
M198's entire seating areas feature tufted upholstery patterns
(extending all the way down the front and on the inner sides of
the arms), the ordinary observer, enlightened by the prior art,

will notice important differences in that pattern — such as the tufting shape and button visibility. Those differences, among others (like arm shape), form a "composite of differences," Egyptian Goddess, 543 F.3d at 675 (quoting Applied Arts, 67 F.2d at 430), that in the aggregate could outweigh any similarities to present different overall impressions rendering it implausible that an ordinary observe could mistake one sofa for the other.

Plaintiff's substantive argument to the contrary falls short. Plaintiff insists that "the prior art actually provides the proper perspective to further support an infringement finding because it shows that the M198 is considerably more similar in design to the D'378 Patent than is the prior art—none of which combines Chesterfield styling with motion." (Pl.'s Br. (Doc. 22) at 19.) But again, as discussed supra Part IV.B.1, the motion capability of the '378 design is plainly functional and thus has no bearing on the instant design patent infringement plausibility analysis. Lee, 838 F.2d at 1189 ("A device that copies the utilitarian or functional features of a patented design is not an infringement unless the ornamental aspects are also copied, such that the overall 'resemblance is such as to deceive.'" (quoting Gorham, 81 U.S. at 528)). In fact, "[w]hen one excludes the functional design elements," namely the motion

- 36 -

capability, "from the scope of the design claim at the conceptual level, and places the ornamental aspects of the designs in context of the prior art, the differences between the patented and accused design take on greater significance." Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc., No. 3:15-cv-849-J-34PDB, 2019 WL 1304290, at *16 (M.D. Fla. Mar. 21, 2019), aff'd sub nom. Lanard Toys Ltd. v. Dolgencorp LLC, 958 F.3d 1337 (Fed. Cir. 2020).

Moreover, Plaintiff's argument that the M198 is "closer to the patented design than to the prior art" is of little import because the ordinary observer test "does not require a mechanical determination — which in this case of crowded art would be impractical — that the accused device is closer to either the patent or the prior art." Wing Shing Prods., 665 F. Supp. 2d at 368 (internal quotation marks omitted). Instead, "the key question is whether an ordinary observer familiar with the prior art would believe that the accused product is the same as the patented design." Performance Designed Prods., 2016 WL 3552063, at *6.

In light of the aforesaid analysis, this court finds, on this record, this is a very close issue and that it strains plausibility to conclude that an ordinary observer familiar with the crowded prior art field of Chesterfield sofa designs could

- 37 -

be deceived into purchasing the M198 believing it to be the '378 Patent. As this court's discussion indicates, Plaintiff may ultimately have a difficult hurdle to withstand the scrutiny of the ordinary observer test's second step.

However, this case is at the motion to dismiss stage. While motions to dismiss design patent infringement claims may be granted, courts have repeatedly found that such motions must only be granted in exceptional circumstances. See supra Part IV.B. And for good reason. While there are circumstances under which this court appropriately sits as an "ordinary observer," in a sense the patent examiner does as well. As a result, while the prior art field may be "crowded," the patent examiner— functioning as an ordinary observer—identified sufficient unique features of the design at issue to justify granting the patent. A more developed record is necessary to determine whether the '378 Patent and the M198 are sufficiently dissimilar, within the context of prior art, to either prove or disprove the alleged infringement. Additionally, courts' reluctance to grant motions to dismiss design patents is eminently reasonable because—as the above analysis shows—design patent infringement is a deeply factual inquiry. See Richardson, 597 F.3d at 1295 ("Design patent infringement is a question of fact[.]"). Motions to

dismiss are not designed to address factual issues, which are better left for adjudication on more developed records.

Therefore, at this early stage the court will deny Defendant's motion to dismiss without prejudice and defer to summary judgment, see Fed. R. Civ. P. 12(i), because it cannot conclude that "the claimed design and accused product are so plainly dissimilar that it is implausible that an ordinary observer would confuse them." Enerlites, 2018 WL 4859947, at *3. While the existing prior art on the record may make such a deception seem unlikely, this court is unwilling to say at this juncture that such deception is implausible, that is, no "reasonable fact-finder could find infringement as a matter of law." Converse, 2021 WL 3293624, at *2. Although the Federal Circuit has repeatedly stated that "[d]esign patents have almost no scope," In re Mann, 861 F.2d 1581, 1582 (Fed. Cir. 1988); accord MRC Innovations, Inc. v. Hunter Mfg., LLP, 747 F.3d 1326, 1333 n.1 (Fed. Cir. 2014), that narrow scope of coverage is largely delineated by the prior art. Because the record of prior art before the court is necessarily incomplete, this case will benefit from further factual development before any dispositive ruling issues.

To avoid establishing a law of the case that might suggest this court, as an ordinary observer, finds Plaintiff has

- 39 -

plausibly alleged infringement, this motion is denied without prejudice, and a ruling on this issue is deferred to summary judgment. <u>See</u> Fed. R. Civ. P. 12(i). Other than noting it is a close issue as described herein, this court makes no finding at this time as to whether a comparison of the claimed and accused designs suggests differences that are noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art. <u>Egyptian Goddess</u>, 543 F.3d at 678.

## V.     CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss First Amended Complaint, (Doc. 18), is hereby **DENIED WITHOUT PREJUDICE,** and a ruling is deferred to summary judgment or trial pursuant to Federal Rule of Civil Procedure 12(i) as described herein.

This the 18th day of February, 2022.

William L. Osteen, Jr.
United States District Judge