IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HOOKER FURNISHINGS CORPORATION, )
                                 )
        Plaintiff/Counter-       )
        claim Defendant,         )
                                 )
    v.                           )        1:20-cv-451
                                 )
THE ELEANOR RIGBY LEATHER CO.,   )
d/b/a GTR LEATHER, INC.,         )
                                 )
        Defendant/Counter-       )
        claim Plaintiff.         )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is Plaintiff Hooker Furnishings Corporation's Motion to Dismiss Defendant's Amended Counterclaim and Strike Amended Affirmative Defense of Inequitable Conduct. (Doc. 43.) Also before this court is Plaintiff's Motion to Dismiss Defendant's Counterclaim and Strike Affirmative Defense of Inequitable Conduct. (Doc. 35.)

Defendant The Eleanor Rigby Leather Company, d/b/a GTR Leather, Inc., filed an amended answer and counterclaim, (Doc. 41), after Plaintiff's initial motion to dismiss, (Doc. 35), so Plaintiff's initial motion will be denied as moot. For the reasons provided herein, Plaintiff's second motion to dismiss, (Doc. 43), will be denied.

# I.    FACTUAL BACKGROUND

Plaintiff and Counterclaim Defendant Hooker Furnishings Corporation ("Hooker") is a furniture company that is a "market-leading producer of innovative, original, and high-quality furniture items." (First Am. Compl. for Patent Infringement and Demand for Jury Trial ("Am. Compl.") (Doc. 15) ¶ 9.)[1] Defendant and Counterclaim Plaintiff The Eleanor Rigby Leather Company, d/b/a GTR Leather Inc. ("GTR"), is a California furniture company that previously conducted business in North Carolina. (Am. Compl. (Doc. 15) ¶ 2; Def. GTR Leather Inc.'s Am. Answer and Am. Countercls. ("Def.'s Answer") (Doc. 41) ¶¶ 2-5.)

## A.    The '378 Patent

In early 2018, employees of Plaintiff, including Jeremy Hoff, developed a new sofa design that combined "reclining motion" with "a Chesterfield-style frame." (See Am. Compl. (Doc. 15) ¶ 14.) Chesterfield-style sofas are a "British classic design" and are "well known within the home furnishings industry" for their "luxury leather, deep buttoning,[2] low back

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] Deep buttoning is also called "tufting." (Am. Compl. (Doc. 15) ¶ 13.) This technique is created by drawing in the upholstery fabric "at regular intervals through use of stitches or thread." (Id.)

- 2 -

and high arms." (Id. ¶ 12.) By adding "specific recliner motion capabilities while preserving the essential elements of the Chesterfield style," (id. ¶ 14), Plaintiff's new design (commercialized through its "Savion collection") "quickly rose to [Plaintiff's] #1 selling seating item," (id. ¶ 19).

To protect the novel aspects of its Savion design, Plaintiff filed US Design Patent Application No. 29/646,282 ("the '282 Application") for a design patent in May 2018. (Id. ¶ 20.) "During prosecution of the '282 Application, the US Patent and Trademark Office [("PTO")] conducted a thorough search of the prior art, and uncovered numerous examples of both Chesterfield-style furniture as well as numerous examples of standard motion furniture. Significantly, no designs featured both the attributes of Chesterfield styling and motion." (Id. ¶ 21.) In May 2020, resulting from the '282 Application, Plaintiff was issued U.S. Patent No. D884,378 ("'378 Patent") entitled "ADJUSTABLE SEAT." (Id. ¶¶ 20, 23.) The '378 Patent consists of the ornamental elements of the "adjustable seat"

depicted in solid lines, as opposed to broken lines,[3] in fifteen separate drawings. (See '378 Patent (Doc. 15-1).) Jeremy Hoff, one of Plaintiff's senior executives, is a named inventor of the '378 Patent. (See id. at 2; see also Am. Compl. (Doc. 15) ¶ 14.)

## B.   Plaintiff's Allegations of Infringement

Plaintiff accuses Defendant of selling furniture that infringes Plaintiff's '378 Patent. (See Am. Compl. (Doc. 15) ¶ 29.) Plaintiff alleges that, like the '378 Patent, Defendant's product — known as the Model M198 — combines motion with the Chesterfield style. (See id. ¶¶ 29, 35.) Specifically, Plaintiff claims that the M198 copies "the manner in which the distinctive Chesterfield-style tufting pattern . . . is visible in each of five different positions through the range of the reclining motion." (Id. ¶ 35.) Plaintiff acknowledges that there may be "minor differences" between the '378 Patent and M198. (Id. ¶ 39.) Nevertheless, Plaintiff insists that the overall

---

[3] "A design patent claims only what is defined by the solid lines of a figure. Any portion of the figure formed by broken lines is for illustrative purposes only and forms no part of the claimed design." Fecon, Inc. v. Denis Cimaf, Inc., No. 1:18-CV-00748, 2021 WL 3562910, at *3 n.6 (S.D. Ohio Aug. 12, 2021) (citing Manual of Patent Examining Procedure § 1503.02). The '378 Patent acknowledges this. (Ex. A. to Am. Compl. ("'378 Patent") (Doc. 15-1) at 2 ("The dash-dot lines in the figures represent boundaries of the design that form no part of the claim. The dot-dot lines represent optional features, such as nail heads, and other portions of the adjustable seat that form no part of the claimed design.").)

- 4 -

impression of the two designs is substantially similar, "thereby inducing" consumers to purchase the M198 supposing it to be Plaintiff's '378 Patent. (Id.)

### C.  **Defendant's Allegations of Inequitable Conduct**

Defendant alleges that the '378 Patent is unenforceable due to Plaintiff's inequitable conduct during Plaintiff's filing and prosecution of the '282 Application, which resulted in the issuance of the '378 Patent. (Def.'s Answer (Doc. 41) at 13-14.)

Defendant alleges that at the time Plaintiff applied for the '378 Patent, Plaintiff sold a Chesterfield-style sofa known as the "Malawi Tonga Chesterfield Sofa" ("Malawi Sofa"). (Id. at 25-26.) Defendant also alleges that more than a year before Plaintiff applied for the '378 Patent, Plaintiff sold another Chesterfield-style sofa known as the "Chester Tufted Stationary Sofa" ("Chester Sofa"). (Id. at 28.)

Defendant alleges that Plaintiff's Patent Application Team consists of the '378 Patent's named inventors — Jeremy Hoff, now CEO of Hooker, as well as Susan Leis and Kenneth Peacock, both freelance furniture designers — and Plaintiff's patent attorneys — David Crowe, Cory Schug, and Jack B. Hicks, all employees or partners of the law firm Womble Bond Dickinson ("Womble Bond"). (Id. at 14-23.)

- 5 -

Defendant alleges that Plaintiff's Patent Application Team was aware of the Malawi Sofa and the Chester Sofa designs, as well as Plaintiff's sales of those designs. (Id. at 26, 28.) Defendant bases these allegations on "the common-sense inference that, when designing a new product, design teams typically review their employer's existing products in the same product category, so as to ensure that the new product is an advance or improvement to the company's existing product offerings," as well as the "common-sense inference that patent attorneys typically attempt to familiarize themselves with their client's products and business, in order to serve their clients more effectively." (Id. at 26, 28.)

Defendant alleges that on August 2, 2019, Plaintiff's patent attorneys filed an Information Disclosure Statement by Applicant ("IDS"), (id. at 22), and that this was the only IDS filed by Plaintiff's Patent Application Team, (id. at 24). The IDS disclosed three prior art references from retailers Home Depot, Pottery Barn, and Wayfair. (Id. at 24–25.) Defendant emphasizes that the IDS did not disclose any prior art Chesterfield sofas sold by Plaintiff, even though Plaintiff's "website was then currently advertising Hooker prior art Chesterfield sofas for sale." (Id. at 25.) Moreover, Defendant alleges that Plaintiff never disclosed to the PTO the existence

- 6 -

or sale of Plaintiff's Malawi Sofa or Chester Sofa products, even though they allegedly consisted of relevant prior art. (Id. at 27, 29.) Defendant argues that "[a] visual comparison of [the Malawi Sofa or Chester Sofa] to the relevant figure of the '378 Patent confirms that [both] prior art [are] material to the claimed subject matter of the '378 Patent." (Id. at 31, 33.) Defendant contends that Plaintiff's website promotes the "Chester [] Sofa as 'visually similar' to the commercial embodiment of the '378 Patent," which "warrants an inference that the Chester [] Sofa is material prior art to the '378 Patent." (Id. at 34–35, 86.) In fact, Defendant claims that "the Malawi [] Sofa and[] the Chester[ ] Sofa are more similar to the claimed subject matter of the '378 Patent than the prior art that was actually cited during prosecution of the '378 Patent." (Id. at 35.)

Defendant alleges that on May 15, 2020, Plaintiff filed Continuation Design Patent Application Number 29/734,829 ("'829 Continuation Application"). (Id. at 43.) On July 1, 2020, Defendant's counsel gave Plaintiff's patent attorney "written notice that GTR believed Hooker's Malawi [] Sofa, the Chester [] Sofa, and the Leggett & Platt Mechanism all were material prior art references to the '378 Patent." (Id. at 44.) Even so, Plaintiff continued with the '829 Continuation Application

- 7 -

without disclosing any of these alleged prior art references. (See id. at 44–45.) On March 2, 2022, the PTO sent Plaintiff an Issue Notification stating "that the '829 Continuation Application would issue as a design patent on March 22, 2022." (Id. at 45.) On March 4, 2022, Defendant filed before this court an affirmative defense and counterclaim of inequitable conduct for nondisclosure of Plaintiff's own prior art references. (Id. at 45–46; see also Def.'s Answer and Countercl. (Doc. 26).)

Defendant alleges that shortly after, on March 18, 2022, Plaintiff's patent attorneys filed with the PTO: (1) an IDS in the '829 Continuation Application disclosing the Malawi Sofa and Chester Sofa, (2) an "Express Abandonment under 37 CFR 1.138 . . . to abandon the '829 Continuation Application and prevent its issuance as a design patent," and (3) a Continued Prosecution Application. (Id. at 46.) Defendant alleges that these filings demonstrate "Plaintiff's awareness that the Malawi [] Sofa and the Chester [] Sofa constituted material prior art references to the '378 Patent family and that Hooker's failure to properly disclose them as such to the Patent Office contaminated any resulting patent — including the '378 Patent." (Id. at 47.) Defendant further alleges that "[i]f the prior art 'Malawi [] Sofa' and the Chester [] Sofa had been disclosed to the Patent Office, the '378 Patent would not have issued, or at

- 8 -

a minimum, it could only have issued after its claim scope was narrowed." (Id. at 49.)

In addition, Defendant alleges that "the 'motion' feature and the five (5) particular positions that are shown in the '378 Patent are the result of a prior art recliner mechanism offered to the public by the company Leggett & Platt." (Id. at 51.) Defendant alleges that Plaintiff did not disclose to the PTO the use of the Leggett and Platt mechanism to achieve the five recliner positions in the '378 Patent. (Id. at 53.) Defendant alleges that this nondisclosure amounts to inequitable conduct:

> Upon learning that the five positions of the sofa design claimed in the '282 Application were industry standards and well-known in the prior art and that these five positions resulted directly from Leggett & Platt Mechanism No. 3368, any reasonable patent examiner would have focused her search narrowly and deeply upon the "Chesterfield" aspect of the claimed design and further examined the exact tufting pattern and arm shape elements of the design claimed. Because material information regarding the five positions was not disclosed during patent prosecution, the examiner's search results were broader and more random [than] they otherwise would have been, resulting in an improper allowance of the '378 Patent.

(Id.)

Defendant insinuates that Plaintiff's Patent Application Team sought to achieve issuance of the '378 Patent despite knowing the existence of material prior art that would likely prevent issuance of the patent. Defendant alleges that "the Hooker Patent Application Team . . . intended to deceive the

- 9 -

Patent Office by withholding information and documents related to the design, public availability, offers to sell and sales of Hooker's prior art Malawi [] Sofa, Hooker's prior art Chester [] Sofa, and the Leggett & Platt Mechanism." (Id. at 54.)

Specifically, Defendant alleges that Hoff was motivated to obtain issuance of the '378 Patent so that he would be promoted to CEO of Hooker. (Id. at 109.) Hoff hired Leis and Peacock to develop the Savion product (the commercial form of the '378 Patent), rather than working with Plaintiff's employees in-house, because Leis and Peacock, as outsiders to Hooker, would be more susceptible to Hoff's influence. (Id.) And the Hooker patent attorneys were motivated to obtain issuance of the '378 Patent in order to secure Plaintiff as a new long-term client, as Defendants allege that prosecution of the '378 Patent was the first time Plaintiff engaged with Womble Bond, instead of engaging its prior law firm, McGuireWoods. (Id. at 55–56, 111.)

## II.  PROCEDURAL HISTORY

Plaintiff filed its original complaint on May 21, 2020, (Doc. 1), two days after the '378 Patent was issued, (see '378 Patent (Doc. 15-1)). On September 18, 2020, Plaintiff filed an Amended Complaint. (Am. Compl. (Doc. 15).) On October 2, 2020, Defendant filed a motion to dismiss Plaintiff's amended

- 10 -

complaint, (Doc. 18), which this court denied without prejudice, (Doc. 21).

On March 4, 2022, Defendant filed an answer to Plaintiff's amended complaint and a counterclaim. (Doc. 26.) Plaintiff moved to dismiss Defendant's counterclaim and to strike Defendant's affirmative defense of inequitable conduct. (Doc. 35.) Briefing was never completed on this motion, (Doc. 35), as Defendant subsequently filed an amended answer and counterclaim, (Def.'s Answer (Doc. 41)).

Plaintiff has moved to dismiss Defendant's amended answer and counterclaim and to strike Defendant's affirmative defense of inequitable conduct. (Doc. 43.) Defendant responded in opposition. (Def. The Eleanor Rigby Leather Co.'s Opp'n to Hooker Furnishings Corp.'s Mot. to Dismiss & Strike Am. Affirmative Defense of Inequitable Conduct ("Def.'s Resp.") (Doc. 45).) Plaintiff replied. (Pl. Hooker Furnishings Corp.'s Reply to Def.'s Opp'n of Hooker Furnishing Corp.'s Mot. to Dismiss & Strike Am. Affirmative Defense of Inequitable Conduct ("Pl.'s Reply") (Doc. 46).)

Plaintiff's motion to dismiss, (Doc. 43), is ripe for adjudication.

## III. **STANDARD OF REVIEW**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id. The factual allegations must be sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 680.

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the [claimant's] favor." Est. of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of

- 12 -

action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). A motion to strike "is the primary procedure for objecting to an insufficient defense." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2014). The Fourth Circuit has explained that "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).

## IV. **ANALYSIS**

Plaintiff requests that this court dismiss Defendant's claim of inequitable conduct and strike Defendant's affirmative defense of inequitable conduct. (Pl.'s Mem. of Law in Supp. of its Mot. to Dismiss Def.'s Am. Countercl. and to Strike Am. Affirmative Defense of Inequitable Conduct ("Pl.'s Br.") (Doc. 44) at 6.) In its answer and counterclaim, Defendant alleges that Plaintiff's Patent Application Team engaged in inequitable conduct by failing to disclose material prior art to the PTO — that is, Plaintiff's own Chesterfield sofas that lacked reclining features and the Leggett & Platt mechanism that

- 13 -

allowed for the reclining features in the '378 Patent — with specific intent to deceive the PTO. (Def.'s Answer (Doc. 41) at 57-62.)

Plaintiff argues that Defendant fails to plead inequitable conduct because: (1) Defendant does not show that Plaintiff's Patent Application Team had actual knowledge of the alleged prior art or its materiality, (Pl.'s Br. (Doc. 44) at 7-9); (2) the alleged prior art are immaterial to the validity of the '378 Patent, (id. at 9-11); and (3) Defendant does not show that Plaintiff's Patent Application Team acted with specific intent to deceive the PTO, (id. at 11).

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). "To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." Id. at 1287 (emphasis added). Thus, a claim for inequitable conduct has two elements: intent to deceive and materiality. See id. "[E]ven if an accused infringer satisfies both prongs of the inequitable conduct test, the district court must still 'weigh the equities to determine whether the applicant's conduct before the PTO warrants

- 14 -

rendering the entire patent unenforceable.'" <u>Va. Innovation Scis., Inc. v. Samsung Elec. Co.</u>, 11 F. Supp. 3d 622, 640 (E.D. Va. 2014) (quoting <u>Therasense</u>, 649 F.3d at 1287).

Although at trial, "[t]he accused infringer must prove . . . both materiality and specific intent by clear and convincing evidence," <u>id.</u>, the higher "clear and convincing" evidentiary standard does not apply at the pleading stage. <u>See</u> <u>Fuma Int'l LLC v. R.J. Reynolds Vapor Co.</u>, No. 1:19cv260, 2019 WL 3066404, at *1 (M.D.N.C. July 12, 2019); <u>Koch Agronomic Serv., LLC v. Eco Agro Res. LLC</u>, No. 1:14cv679, 2015 WL 5712640, at *5 n.5 (M.D.N.C. Sept. 29, 2015). Even so, in addition to the general pleading requirements of Fed. R. Civ. P. 8(a), inequitable conduct must be pleaded with particularity under Fed. R. Civ. P. 9(b). <u>See</u> <u>Exergen Corp. v. Wal-Mart Stores, Inc.</u>, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). This requires the party pleading inequitable conduct to "identify the specific who, what, when, where, and how" of the misrepresentation or omission before the PTO. <u>Id.</u> at 1328. Further, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this

information with a specific intent to deceive the PTO." Id. at 1328−29.

A.   **Materiality**

"Failure to disclose prior art can be material." Siemens Gamesa Renewable Energy A/S v. Gen. Elec. Co., No. CV 21-10216-WGY, 2022 WL 2965682, at *7 (D. Mass. July 27, 2022). "Because neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct, claims of inequitable conduct that are based on such omissions require proof of but-for materiality." Therasense, 649 F.3d at 1292−93. A prior art reference is "but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Id. at 1291. At the pleading stage, "it is not enough to simply allege − as a legal conclusion − that the [undisclosed prior art] was material − rather, there must be facts alleged supporting that element." SAP Am., Inc. v. Purple Leaf, LLC, No. C 11-4601 PJH, 2012 WL 2237995, at *6 (N.D. Cal. June 15, 2012).

Defendant alleges that Plaintiff failed to disclose to the PTO Plaintiff's own Chesterfield sofas that lacked reclining features, as well as the Leggett & Platt mechanism that allowed for the reclining features in the '378 Patent. (Def.'s Answer

- 16 -

(Doc. 41) at 57-62, 81, 95.) However, Defendant only provides
legal conclusions of materiality:

> A visual comparison of these prior art references to
> the relevant figure of the '378 Patent confirms that
> Hooker's Malawi [] Sofa prior art is material to the
> claimed subject matter of the '378 Patent.
>
> . . .
>
> A visual comparison of the Chester [] Sofa prior art
> to the relevant figure of the '378 Patent confirms
> that Hooker's Chester [] Sofa prior art is material to
> the claimed subject matter of the '378 Patent.
>
> . . .
>
> Hooker's own public promotion of Hooker's prior art
> Chester [] Sofa as "visually similar" to the
> commercial embodiment of the '378 Patent warrants an
> inference that the Chester [] Sofa is material.

(Def.'s Answer (Doc. 41) at 31, 33, 34.) Simply alleging "as a
legal conclusion" that the undisclosed prior art was material
"is not enough." See SAP America, Inc., 2012 WL 2237995, at *6.
Defendant does not allege facts showing that the PTO would not
have issued the '378 Patent if the alleged prior art had been
disclosed. Further, as Plaintiff explains, Defendant does not
address the differences between the alleged prior art and the
"different alternate positions that comprise the novel design
claimed in the '378 Patent." (Pl.'s Br. (Doc. 44) at 17.)

In addition to the Malawi Sofa and the Chester Sofa,
Defendant also alleges that the Leggett & Platt mechanism was
undisclosed prior art. (Def.'s Answer (Doc. 41) at 49-54.)

- 17 -

Defendant alleges only that the mechanism enables the different reclining positions that comprise the design claimed in the '378 Patent, not that the mechanism itself is part of the '378 Patent's design.[4] (Id. at 52-53.) Because design patents only protect ornamental features, see Richardson v. Stanley Works, Inc., 597 F.3d 1288, 1293-94 (4th Cir. 2010), the functional mechanism enabling the alternate positions of the design in the '378 Patent does not constitute material prior art.

Defendant does allege that Plaintiff's patent attorneys eventually filed with the PTO "an 'Information Disclosure Statement' that disclosed the Malawi [Sofa] and the Chester [] Sofa as prior art references." (Def.'s Answer (Doc. 41) at 46.) This could suggest that Plaintiff's Patent Application Team, once made aware of the alleged prior art, considered them material such that they warranted disclosure to the PTO.

_____

[4] In accordance with this finding, this court previously explained that an argument that "the '378 Patent's 'reclining motion' is somehow ornamental — as opposed to functional — is demonstrably implausible." (Mem. Op. and Order (Doc. 25) at 20 (emphasis added).) Even so, at this juncture, this court declines to address whether the different reclining positions that comprise the design claimed in the '378 Patent are purely functional or also ornamental. "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." Sport Dimension, Inc. v. Coleman Co., 820 F.3d 1316, 1320 (Fed. Cir. 2016) (citations omitted). This court cannot make this type of determination at this juncture.

Plaintiff appears to argue that even if the alleged prior art were material, they were "at most, merely cumulative." (See Pl.'s Br. (Doc. 44) at 22.)

"[I]nformation that is cumulative to information already of record is not material to patentability." Semiconductor Energy Lab'y, Co. v. Samsung Elecs. Co., 24 F. Supp. 2d 537, 540 (E.D. Va. 1998), aff'd, 204 F.3d 1368 (Fed. Cir. 2000), amended (Apr. 5, 2000) (citing 37 C.F.R. § 1.56). Nonetheless, "a withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references." Id. (quoting Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co., 4 F. Supp. 2d 477, 482 (E.D. Va. 1998)). Regardless, "[t]he question of whether prior art that was not disclosed is cumulative is a factual issue that should not be resolved at the pleading stage." Cypress Semiconductor Corp. v. GSI Tech., Inc., No. 13-CV-02013-JST, 2014 WL 988915, at *5 (N.D. Cal. Mar. 10, 2014).

Defendant has alleged that Plaintiff eventually sought to disclose the Malawi Sofa and the Chester Sofa; this is sufficient to plausibly allege facts which support a reasonable inference that the alleged prior art was material. While it may be the case that the alleged prior art was cumulative, "[t]he

cumulative determination will require a fuller record and is not a proper inquiry at the 12(b)(6) stage." See <u>W.L. Gore & Assocs., Inc. v. Medtronic, Inc.</u>, 850 F. Supp. 2d 630, 635 (E.D. Va. 2012). "Although the facts alleged in [Defendant's] counterclaim may not be enough to satisfy the <u>Therasense</u> elements by clear and convincing evidence, the alleged facts are sufficient to satisfy <u>Exergen's</u> pleading requirements" for materiality. See <u>id.</u>

**B.** **<u>Intent</u>**

Pleading intent requires alleging that the patent applicant made a "'deliberate decision to withhold a known material reference' or to make a knowingly false representation." <u>Exergen Corp.</u>, 575 F.3d at 1331. "[A]lthough 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." <u>Exergen Corp.</u>, 575 F.3d at 1328–29. Further distinguishing between the standards at the pleading stage in contrast to the burden of proof at trial, the <u>Exergen</u> court explains:

> A reasonable inference is one that is plausible and
> that flows logically from the facts alleged, including
> any objective indications of candor and good faith. In
> contrast to the pleading stage, to prevail on the
> merits, the accused infringer must prove both
> materiality and intent by clear and convincing
> evidence. Whereas an inference of deceptive intent
> must be reasonable and drawn from a pleading's
> allegations of underlying fact to satisfy Rule 9(b),
> this inference must be the <u>single most reasonable</u>
> inference able to be drawn from the evidence to meet
> the clear and convincing standard.

<u>Id.</u> at 1329 (internal citations and quotation marks omitted)
(emphasis in in original). Thus, at the pleading stage, the
allegations of fact must establish a reasonable inference of
inequitable conduct, whereas at trial, the inference of
inequitable conduct drawn must be the single most reasonable
inference. <u>See</u> <u>id.</u>

### 1. <u>Plaintiff's Patent Attorneys</u>

Defendant's allegations as to Plaintiff's counsel — David
Crowe, Cory Schug, and Jack B. Hicks — are simply speculative
and unreasonable. Defendant includes a number of allegations
concerning inequitable conduct that fail to meet the heightened
standards of Rule 9(b). Defendant fails to "raise a right to
relief above the speculative level" so as to "nudge[] the[]
claims across the line from conceivable to plausible." <u>See</u>
<u>Twombly</u>, 550 U.S. at 555, 570; <u>see also</u> <u>Iqbal</u>, 556 U.S. at 680.

Defendant plausibly alleges that some of Plaintiff's patent
attorneys have extensive experience in the furniture industry,

- 21 -

(see Def.'s Answer (Doc. 41) at 58-59), and likely had access to Plaintiff's website, (see id.). However, at best, that knowledge is only sufficient to establish a plausible inference that the patent attorneys should have known about the alleged prior art. Such "should have known" allegations are insufficient to establish actual knowledge. See Recticel Automobilsysteme GMBH v. Auto. Components Holdings, LLC, No. 2:10-CV-14097-SFC, 2011 WL 5307797, at *8 (E.D. Mich. Nov. 3, 2011); see also Fuma Int'l LLC v. R.J. Reynolds Vapor Co., No. 19-cv-260, 2020 WL 3470458, at *1 (M.D.N.C. Mar. 6, 2020) ("A finding that the misrepresentation or omission amounts to gross negligence or negligence under a should have known standard does not satisfy this intent requirement."). Further, Defendant's allegations attributing a profit motive to the actions of Plaintiff's patent attorneys in order to generate factual support for intent related to inequitable conduct, (see Def.'s Answer (Doc. 41) at 55-56), are not plausible. This court finds Defendant is relying upon unreasonable inferences and rank speculation to infer patent counsel would act in an inequitable manner solely because of a profit motive or relationship. Absent factual support, this court rejects an unreasonable inference that an attorney would act inequitably simply because of the presence of a profitable client.

## 2. **Hoff**

Although this court finds Defendant's allegations as to Plaintiff's patent attorneys insufficient to plead inequitable conduct, this court finds Defendant has plausibly alleged the requisite intent element of inequitable conduct as to Hoff. Whether or not Defendant is able to prove that conduct will be determined following discovery at summary judgment or trial.

First, although primarily circumstantial, Defendant's allegations are plausible. Hoff is alleged to have been a senior executive of Hooker with knowledge of Plaintiff's existing designs and sales. (See Def.'s Answer (Doc. 41) at 57.) In light of his alleged position with Hooker, an inference of Hoff's extensive knowledge is reasonable. Similarly, it is reasonable to infer that in an application for a patent, Hoff would attempt to make a new product different from, or an improvement to, Hooker's existing products, (see id. at 57-58), particularly when credited for conceiving of the Savion product that resulted in the '378 patent and when listed as an inventor on the '378 Patent, (see id. at 23-24; see also Am. Compl. (Doc. 15) ¶ 14; '378 Patent (Doc. 15-1) at 2).

Second, although not a strong inference, the combination of profit motive, (see Def.'s Answer (Doc. 41) at 55), change in patent counsel by Hoff and Plaintiff, (see id. at 55-56), the

- 23 -

engagement of outside designers, (see id. at 58), and the presence of visually similar products on Plaintiff's website, (see id. at 59), are together sufficient to create a plausible inference that Plaintiff "knew of the reference, knew that it was material, and made a deliberate decision to withhold it." See Fuma Int'l LLC, 2020 WL 3470458, at *1 (quoting Therasense, 649 F.3d at 1290). Although the inference is particularly weak as to Hoff's knowledge of the materiality of the alleged prior art, given the alleged similarities between the '378 patent and Plaintiff's other product offerings, this court finds the allegations — drawing all reasonable inferences in favor of Defendant as the non-moving party — reasonable.

Third, Defendant's allegations concerning Hoff, and perhaps others, to show that Plaintiff "made a deliberate decision" to withhold the alleged prior art are not strong. See Fuma Int'l LLC, 2020 WL 3470458, at *1; see also Exergen Corp., 575 F.3d at 1331. An "omission [that] amounts to gross negligence or negligence . . . does not satisfy [the] intent requirement." Id. Nonetheless, Defendant alleges that each member of the Patent Application Team had personal financial motivations for successfully obtaining the '378 Patent. (See Def.'s Answer (Doc. 41) at 58, 60.) While that alone does not plead facts of a "deliberate decision" to withhold the alleged prior art, see

- 24 -

Fuma Int'l LLC, 2020 WL 3470458, at *1; see also Exergen Corp.,

575 F.3d at 1331, that fact combined with Plaintiff's disclosure

of the Malawi Sofa and Chester Sofa in an IDS in the '829

Continuation Application and Plaintiff's attempt to abandon the

'829 Continuation Application on March 18, 2022, (see Def.'s

Answer (Doc. 41) at 46), is sufficient to support a reasonable

inference that material information was deliberately withheld.

At this stage, the inference must be reasonable, but it need not

be the single most reasonable inference. See Exergen Corp., 575

F.3d at 1329 n.5.

Accordingly, Defendant plausibly alleges that Plaintiff —

at least as to Hoff — knew of the alleged prior art and

plausibly alleges facts supporting a reasonable inference of a

"deliberate decision" to withhold the alleged prior art, see id.

at 1331, thus pleading sufficient facts to plausibly show

specific intent to deceive the PTO. Drawing all reasonable

inferences in favor of Defendant requires that Plaintiff's

motion to dismiss and strike be denied.[5]

---

[5] Defendant should not misconstrue this finding. In making
this finding, this court is not establishing a law of the case
such that if Defendant proves these facts, Defendant is able to
survive summary judgment. The reasonableness of this inference
could change significantly depending upon additional facts
brought forward during discovery with respect to these
allegations and the context within which these facts are
considered. This finding relates solely to plausibility, which
is very different from proof by clear and convincing evidence.

## V. <u>CONCLUSION</u>

In sum, Defendant pleads sufficient facts to show materiality of the alleged prior art under the <u>Exergen</u> standard, and Defendant pleads sufficient facts allowing a reasonable inference that Plaintiff acted with specific intent to deceive the PTO.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Plaintiff Hooker Furnishings Corporation's Motion to Dismiss Defendant's Counterclaim and Strike Affirmative Defense of Inequitable Conduct, (Doc. 35), is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff Hooker Furnishings Corporation's Motion to Dismiss Defendant's Amended Counterclaim and to Strike Amended Affirmative Defense of Inequitable Conduct, (Doc. 43), is **DENIED.**

This the 31st day of March, 2023.

_____
United States District Judge

- 26 -